IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES OF AMERICA                                               PLAINTIFF

V.                           CASE NO. 5:19-CR-50037-1

CHARLIE FOSTER                                                         DEFENDANT

## MEMORANDUM OPINION AND ORDER

Currently before the Court is Defendant Charlie Foster's Motion to Suppress (Doc. 20) and the Government's Response (Doc. 22). On May 8, 2019, Mr. Foster was charged by Indictment (Doc. 1) with knowingly possessing a firearm after having been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C §§ 922(g)(1) and 924(a)(2). Mr. Foster seeks to suppress evidence related to a firearm found on his person and which led to his indictment. For the reasons given below, Mr. Foster's Motion is **DENIED**.

## I. BACKGROUND

The following facts are taken from Mr. Foster's Motion to Suppress. (Doc. 20). On March 5, 2019, Officer Johnson with the Springdale Police Department stopped a black Toyota Avalon for "having an unsafe windshield (several cracks)." *Id.* at 1. Officer Johnson made contact with the driver of the vehicle, Mr. Foster, and explained, "the reason I pulled you over is you got this cracked windshield." *Id.* at 5. Officer Johnson then asked Mr. Foster and his female passenger for identification. Mr. Foster provided his driver's license, and the passenger, who did not have a form of identification, provided a name that was later determined to be fictitious. At that time, Officer Johnson noted that Mr. Foster and

1

the passenger appeared to be "very nervous." *Id.* at 1. Specifically, Officer Johnson observed Mr. Foster's hands shaking.

After returning to his police cruiser to check Mr. Foster and his passenger for outstanding warrants, Officer Johnson observed Mr. Foster and the passenger "moving around inside the vehicle." *Id.* at 1–2. Additionally, Officer Johnson learned from dispatch that Mr. Foster was on parole with a search waiver on file and that the passenger had an active warrant for her arrest. At that time, Officer Johnson returned to the vehicle and ordered Mr. Foster to step outside. Complying with that order, Mr. Foster exited the vehicle and "tugged his jacket down with his hand." *Id.* at 2. Officer Johnson then explained to Mr. Foster that he had observed Mr. Foster and his passenger moving around in the vehicle, to which Mr. Foster replied that the two were "putting the paperwork back in the glove compartment." *Id.* Officer Johnson then conducted a pat down of Mr. Foster for weapons, which revealed a handgun.

In his Motion to suppress, Mr. Foster asks this Court to suppress the handgun found on his person. Mr. Foster advances two arguments in support of this request: (1) that Officer Johnson did not have probable cause to make the initial traffic stop; and (2) that Officer Johnson unreasonably extended the initial stop by asking Mr. Foster and his passenger for identification. Notably, Mr. Foster does not argue that the search of his person was unconstitutional. The Motion has been fully briefed, and the matter is now ripe for decision.

## II. LEGAL STANDARD

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated,

and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. Simply put, the basic purpose of the Fourth Amendment "is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *United States v. Carpenter*, 138 S. Ct. 2206, 2213 (2018) (internal quotation marks omitted).

For Fourth Amendment purposes, "[i]t is well established that a roadside traffic stop is a 'seizure' within the meaning of the Fourth Amendment." *United States v. Jones*, 269 F.3d 919, 924 (8th Cir. 2001). To be a reasonable seizure, "a traffic stop must be supported by, at a minimum, 'a reasonable, articulable suspicion that criminal activity' is occurring." *United States v. Frasher*, 632 F.3d 450, 453 (8th Cir. 2011) (quoting *Jones*, 289 F.3d at 924.). A traffic violation, even for a minor infraction, provides the necessary quantum of suspicion to stop a vehicle and its occupants. *See Frasher*, 632 F.3d at 453. Thus, a police officer may lawfully conduct a traffic stop of a vehicle when the officer is "aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion" that a traffic violation is being committed. *United States v. Martin*, 706 F.2d 263, 265 (8th Cir. 1983).

To determine whether a police officer had the requisite level of suspicion to conduct a valid traffic stop, a court must look at whether "the facts available to the officer at the moment of the seizure or the search [would] warrant a man of reasonable caution in the belief that the action taken was appropriate[.]" *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968) (internal quotation marks omitted). Although "something more than a 'hunch' of wrongdoing is necessary, the level of suspicion required to support a traffic stop is

'considerably less' than proof of wrongdoing by a preponderance of the evidence." *United States v. Edgerton*, 438 F.3d 1043, 1047 (10th Cir. 2006) (internal quotation marks omitted). Furthermore, "mistakes of law or fact, if objectively reasonable, may still justify a valid stop." *United States v. Hollins*, 685 F.3d 703, 706 (8th Cir. 2012). "[I]n mistake cases the question is simply whether the mistake, whether of law or of fact, was an objectively reasonable one." *United States v. Smart*, 393 F.3d 767, 770 (8th Cir. 2005). In sum, the determination of whether reasonable suspicion existed "is not to be made with the vision of hindsight, but instead by looking to what the officer reasonably knew at the time." *Hollins*, 685 F.3d at 706 (quoting *United States v. Sanders*, 196 F.3d 910, 913 (8th Cir. 1999)).

Following a valid traffic stop, a police officer may conduct "routine tasks related to the traffic violation . . . ." *United States v. Chartier*, 772 F.3d 539, 543 (8th Cir. 2014). In addition to determining whether to issue a traffic citation, such tasks include "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez v. United States*, 135 S. Ct. 1609, 1615 (2015). "If, during the course of completing these routine tasks, 'the officer develops reasonable suspicion that other criminal activity is afoot, the officer may expand the scope of the encounter to address that suspicion.'" *Chartier*, 772 F.3d at 543 (quoting *United States v. Peralez*, 526 F.3d 1115, 1120 (8th Cir. 2008)). Absent suspicion of other criminal activity, a traffic stop "remains lawful only 'so long as [the] unrelated inquiries do not measurably extend the duration of the stop.'" *Rodriguez*, 135 S. Ct. at 1615 (quoting *Arizona v. Johnson*, 555 U.S. 323, 333 (2009)).

4

In a criminal case, a defendant may move to suppress the use of evidence at trial that the defendant believes was obtained in violation of the Fourth Amendment, including any "fruit" deriving from that evidence. *See Wong Sun v. United States*, 371 U.S. 471, 484–86 (1963). Such evidence is suppressed only when two separate determinations are made: (1) that "the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct," and (2) that "the exclusionary sanction is appropriately imposed in a particular case." *United States v. Leon*, 468 U.S. 897, 906–07 (1984).

Applying the foregoing to the facts at hand, the Government bears the burden of proving by a preponderance of the evidence that Mr. Foster's Fourth Amendment rights were not violated during the March 5, 2019 traffic stop, or alternatively, that suppressing the handgun found on Mr. Foster's person is not an appropriate remedy in this case. *See, e.g., Carter v. United States*, 729 F.2d 935, 940 (8th Cir. 1984) ("As a general rule, the burden of proof is on the defendant who seeks to suppress evidence, but on the government to justify a warrantless search.") (internal citations omitted); *cf. United States v. Matlock*, 415 U.S. 164, 178 n.14 (1974) ("In any event, the controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence.").

### III. DISCUSSION

Respecting Mr. Foster's first argument, the Court begins by noting that Mr. Foster does not contest that he had a crack in his windshield. He simply argues that the crack, which he describes as being "towards the dashboard" (Doc. 20, p. 4), does not amount to a traffic violation under Arkansas law. Mr. Foster attached four still photographs of his windshield that were taken from police body cameras during the traffic stop. (Docs. 20-

1—20-4). The Court has reviewed these photographs and finds by a preponderance of the evidence that there was an observable crack in Mr. Foster's windshield. The Court further finds that the crack was of the size and nature described by Mr. Foster in his Motion to Suppress.

Although Arkansas does not have a statute *explicitly* outlawing cracked windshields, Mr. Foster correctly acknowledges that both the Eighth Circuit and Arkansas Supreme Court have held that driving with a cracked windshield violates Ark. Code Ann. § 27-32-101(a)(2)(A).[1] *United States v. Davis*, 598 F. App'x 472, 473 (8th Cir. 2015) (unpublished opinion) ("Driving a vehicle with a windshield cracked across the driver's field of vision . . . is a 'safety defect' under Ark. Code Ann. § 27–32–101(a)(2)(A)."); *Villanueva v. State*, 2013 Ark. 70, at *5 (2013) (holding that "a windshield with a crack running from roof post to roof post across the driver's field of vision is the type of 'safety defect' contemplated by section 27–32–101(a)(2)(A))"). Mr. Foster seeks to distinguish his cracked windshield from those in *Davis* and *Villanueva* because the crack in his windshield did not obstruct his field of vision. Accordingly, Mr. Foster argues that Officer Johnson did not have probable cause to conduct the March 5, 2019 traffic stop because no traffic violation occurred.

As previously explained, the validity of the March 5, 2019 traffic stop does not depend on whether Mr. Foster's windshield actually violated Ark. Code Ann. § 27-32-101(a)(2)(A). The Eighth Circuit has held, "[m]istakes of law or fact, if objectively

---

[1] Ark. Code Ann. § 27-32-101(a)(2)(A) provides in relevant part, "[a]ny law enforcement officer having reason to believe that a vehicle may have safety defects shall have cause to stop the vehicle . . . ."

reasonable, may still justify a valid stop." *Hollins*, 685 F.3d at 706; *see also Smart*, 393 F.3d at 770 ("[T]he validity of a stop depends on whether the officer's actions were objectively reasonable in the circumstances, and in mistake cases the question is simply whether the mistake, whether of law or of fact, was an objectively reasonable one."); *United States v. Williams*, 929 F.3d 539, 544 (8th Cir. 2019) (explaining that all determinations of reasonable suspicion or probable cause, including those in mistake cases, are made by looking at what the police officer knew at the time the search or the seizure was conducted).

A police officer, therefore, does not need to be certain that a traffic violation has occurred in order to conduct a lawful traffic stop; the officer needs only a reason to suspect that such a violation has occurred. *See New Jersey v. T.L.O.*, 469 U.S. 325, 346 (1985) ("But the requirement of reasonable suspicion is not a requirement of absolute certainty: 'sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment.'" (quoting *Hill v. California*, 401, U.S. 797, 804 (1971))); *see also United States v. Edgerton*, 438 F.3d 1043, 1047 (10th Cir. 2006) ("While something more than a hunch of wrongdoing is necessary, the level of suspicion required to support a traffic stop is considerably less than proof of wrongdoing by a preponderance of the evidence.") (internal quotation marks omitted).

The Court has no trouble finding by a preponderance of the evidence that Officer Johnson had, at a minimum, a reason to suspect that Mr. Foster's cracked windshield was a traffic violation under Arkansas law. As Mr. Foster explains in his Motion, Officer Johnson articulated the purpose for the stop: "The reason I pulled you over is you got this cracked windshield." (Doc. 20, p. 5). Even if Officer Johnson was mistaken in believing

that the admittedly cracked windshield violated Ark. Code Ann. § 27–32–101(a)(2)(A), his mistake would be a reasonable one. In sum, Mr. Foster was not unreasonably seized when Officer Johnson stopped his vehicle for having an unsafe windshield.

As for his second argument, Mr. Foster reasons that once Officer Johnson observed that the cracked windshield did not impair his vision, Officer Johnson no longer had a reason to suspect that a traffic violation had been committed. Thus, Mr. Foster concludes that Officer Johnson unlawfully extended the traffic stop by requesting identification from Mr. Foster and his passenger.

The Eighth Circuit has decisively held that an officer may request identification from the occupants of a vehicle following a lawful traffic stop. *United States v. Clayborn*, 339 F.3d 700, 702 (8th Cir. 2003). In *Clayborn*, Missouri Detective Lee Hall stopped a vehicle for driving without license plates. *Id.* at 701. Detective Hall made contact with the vehicle's driver, Roosevelt Clayborn, and informed him of the stop's purpose. *Id.* Clayborn then pointed out that the vehicle did, in fact, have a temporary tag, which Detective Hall had not observed when he stopped and approached the vehicle. *Id.* Despite being made aware that no traffic violation had occurred, Detective Hall asked Clayborn for his registration papers, insurance card, and driver's license. *Id.* A subsequent check revealed that Clayborn's license was suspended. *Id.* Clayborn was subsequently arrested for drug and firearm offenses discovered as the stop transpired. *Id.*

On appeal to the Eighth Circuit, Clayborn argued that once Detective Lee observed that the vehicle had a temporary tag, he unreasonably extended the scope of the traffic stop by asking for Clayborn's registration papers and identification. *Id.* at 702. In rejecting that argument, the Eighth Circuit held that "Detective Hall's actions did not exceed those

justified by the traffic stop and no violation of the Fourth Amendment occurred." *Id.* The court reasoned that a police officer does not unconstitutionally extend a valid traffic stop by requesting proof of license and registration. *Id.*

The Eighth Circuit's decision in *Clayborn* forecloses Mr. Foster's second argument. The Eighth Circuit "has 'consistently held that a reasonable investigation following a justifiable traffic stop may include asking for the driver's license and registration.'" *Hollins*, 685 F.3d at 706–07. Furthermore, even assuming Officer Johnson at some point realized that Mr. Foster's windshield did not violate Arkansas law, Officer Johnson did not unconstitutionally extend the valid traffic stop by requesting Mr. Foster's identification. Accordingly, Mr. Foster was not unreasonably seized as a result of Officer Johnson asking for—and then running a record check of—his and his passenger's identification.

To summarize, Officer Johnson conducted a lawful traffic stop of Mr. Foster's vehicle for having a cracked windshield, and even if Officer Johnson was mistaken in believing that Mr. Foster's windshield violated Arkansas law, he was justified in asking Mr. Foster and his female passenger for identification. Simply put, at no point during the March 5, 2019 traffic stop was Mr. Foster subjected to an unconstitutional seizure within the meaning of the Fourth Amendment.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Mr. Foster's Motion to Suppress Evidence (Doc. 20) is **DENIED**. This case will be set for trial in a separate scheduling order.

**IT IS SO ORDERED** on this 20th day of September 2019.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE